**UNITED STATES of America, Appellee,**

v.

**C.L. CHILDRESS, Appellant.**

**No. 82–1261.**

United States Court of Appeals, Eighth Circuit.

Submitted July 16, 1982.

Decided Aug. 24, 1982.

Limited Rehearing En Banc Granted Sept. 2, 1983.

Paul J. Schroeder, Jr., Spoehrer & Lemkemeier, St. Louis, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Robert T. Haar, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

C.L. Childress appeals his conviction on three counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 1202(a)(1) (App.) entered in the District Court[1] for the Eastern District of Missouri after a jury trial. For reversal Childress argues that the district court erred in (1) denying his motion to suppress a semiautomatic pistol seized on September 11, 1980, during an alleged illegal investigatory stop,[2] (2) denying his motion to reopen the suppression hearing, and (3) denying his motion to strike the impanelled jury. For the reasons discussed below, we affirm the district court.

Childress, a convicted felon,[3] was arrested on three separate occasions between September 1980 and July 1981 for illegal possession of firearms. On appeal he challenges the admissibility of evidence relating to his September 11, 1980 arrest, count one of the indictment against him. The relevant facts are as follows. On September 10, 1980, St. Louis Metropolitan Police Detectives Robert Schaefer and Emmett Gelhot received information from a confidential informant that Childress was distributing drugs from a building located at 1607 North 18th Street and that Childress was usually armed, carrying a weapon in the crotch area of his pants. The informant also told the detectives that Childress had another individual dispense the drugs at the building, that Childress made frequent trips to the building to keep his distributor supplied, and that Childress drove a green Pontiac Bonneville. Based on this information, Schaefer established a surveillance of the building during the afternoon of September 10, 1980. Although the building appeared to be abandoned, Schaefer observed several

individuals approach the rear of the building and then depart after a few minutes. Schaefer surveyed the building for approximately one half hour on this date but did not see Childress.

On September 11, 1980, Schaefer and Gelhot re-established surveillance of the building at approximately 9:00 a.m. At approximately 11:30 a.m., Schaefer observed Childress, whom he identified from police photographs, arrive in a green Pontiac Bonneville and park on the east side of the street. At this time Schaefer was positioned at the rear of the building adjacent to a gangway which ran between 1607 North 18th Street and the adjacent building and Gelhot was positioned at the front of the building. Childress walked across the street and into the gangway. Childress saw Schaefer, turned and began walking back to his automobile. Schaefer then shouted, "police officer, stop," but Childress continued to walk toward his automobile and Schaefer followed. Before Schaefer reached Childress he saw Childress reach into the front of his clothing at waist level and throw a pistol to the ground. As Schaefer retrieved the weapon, a Raven Arms .25 caliber semi-automatic pistol, Gelhot arrested Childress.

On appeal Childress first argues that the investigatory stop was illegal and therefore the pistol should have been suppressed. At the suppression hearing only Schaefer testified as to the events of the September 11, 1980 arrest. The magistrate credited Schaefer's testimony. For purposes of this appeal we accept the magistrate's findings of fact that the stop of Childress and discovery of the pistol occurred essentially the way Schaefer testified. *See, e.g., United States v. Henderson,* 645 F.2d 627, 629 (8th Cir.), *cert. denied,* 454 U.S. 829, 102 S.Ct. 122, 70 L.Ed.2d 104 (1981). Thus, there is no issue as to whether the detectives prop-

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

2. The district court referred the suppression motion to the United States Magistrate David D. Noce for hearing and recommended disposition, 28 U.S.C. § 636(b). The district court

adopted the report and recommendation of the magistrate.

3. Childress had been convicted on January 28, 1974, of attempted robbery in the first degree by means of a dangerous weapon and assault with intent to kill with malice, both felonies.

erly arrested Childress once they observed the pistol. The question is whether the initial stop was unlawful.

In *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (*Terry*), the Supreme Court held that fourth amendment protections apply to a "stop and frisk" situation which is less than a complete arrest and that the constitutionality of the stop depends upon the reasonableness of the police conduct in the circumstances.

> [I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.... [I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?

*Id.* at 21–22, 88 S.Ct. at 1879–1880.

Childress asserts that the stop in the present case was not justified under *Terry* because the detectives did not have reasonable suspicion based upon objective facts from which they could have concluded that Childress was involved in criminal activity. Childress argues that there was nothing suspicious about his actions on September 11, 1980, and further argues that the information from the unidentified informant did not establish reasonable suspicion because there is no evidence of the informant's reliability in the record.

■ We disagree. Schaefer testified that the unidentified informant had given reliable information on three or four previous occasions prior to September 10, 1980. It is true that the informant's reliability was not further demonstrated in the record. However, a lesser showing of the reliability of an informant is required to support the reasonable suspicion which is a prerequisite for an investigatory stop than is needed to support probable cause for a search. *See United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); *United States v. Sierra-Hernandez,* 581 F.2d

760, 762 (9th Cir.), *cert. denied,* 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. Afanador,* 567 F.2d 1325, 1329 (5th Cir.1978). Although it is not certain how much less demanding the test of reliability is where only reasonable suspicion is required, the Supreme Court has said, "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized." *Adams v. Williams,* 407 U.S. 143, 147, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

■ In the present case the magistrate found that the informant's information had sufficient indicia of reliability to provide the detectives with reasonable grounds to detain Childress for questioning when Schaefer first showed himself to Childress and directed him to stop. The district court's findings on a motion to suppress are subject to the clearly erroneous standard of review. *See United States v. Bruton,* 647 F.2d 818, 822 (8th Cir.), *cert. denied,* 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981); *United States v. Williams,* 604 F.2d 1102, 1121 (8th Cir.1979). We conclude that there is ample evidence in the record to support the court's finding.

■ The informant told the detectives that Childress was dealing in narcotics from a building located at 1607 North 18th Street and was known to be armed. Prior surveillance established that the building at that location was visited by several individuals for brief periods of time even though it appeared to be abandoned. On September 11, 1980, a man known to the detectives to be Childress arrived at the building in a car previously described by the informant and started toward the rear of the building. The informant's information was specific, detailed and was corroborated by the surveillance. Altogether there were sufficient objective facts known to the detectives to justify an investigatory stop for further inquiry.

Childress next argues that the district court erred in denying his motion to reopen

the suppression hearing. The relevant facts are as follows. Prior to the hearing, Childress received copies of the police reports concerning his June and July 1981 arrests. However, Childress was unable to obtain a copy of the police report concerning his September 11, 1980 arrest [4] which had been prepared by Gelhot. The government refused to furnish him with its copy of that report on the basis that it was Jencks [5] material. At the close of the suppression hearing, Childress' counsel requested a one-week continuance indicating that Childress and Bernard Cross, a witness to the July 1981 arrest, were going to testify. The continuance was granted but Childress' counsel subsequently notified the court that he would not present any evidence at the suppression hearing.

On the first day of trial, Childress requested the district court to reopen the suppression hearing. The basis for the motion was the government's previous failure to supply him with a copy of the September 11, 1980 police report. Childress reasoned that he could not testify as to his version of the September 11, 1980 arrest at the hearing because it was possible that the police report contained additional information beyond that which Schaefer testified to, which could have been used to impeach Childress' credibility. The district court denied the motion based on its findings that the report contained substantially the same information that Schaefer had testified to, that Childress had a full opportunity to cross-examine Schaefer, and that the suppression hearing had been continued at Childress'

request to give Childress the opportunity to decide whether to put on additional evidence. We affirm the district court.

■ Childress waived his opportunity to testify at the suppression hearing and has not established good cause to obtain relief from that waiver. See Fed.R.Crim.P. 12(f). Childress has not shown that he was prejudiced by not having the police report at the suppression hearing. Schaefer testified as to the contents of the report and Childress' counsel was given a full opportunity to cross-examine. Childress has pointed to nothing in the report that would have aided his theory at the suppression hearing that there was an illegal seizure. As already noted, Childress' counsel had the report for trial.

■ Childress' final argument is that the district court erred in refusing to grant his motion to strike the impanelled jury. Childress, a black male, asserts that the all white jury deprived him of the right to a jury of his peers. There is no merit to this argument.

Initially we note that the thirty-six member jury panel included five blacks. The government exercised its peremptory challenges to strike four of the black panel members and Childress used one of his challenges to strike the remaining black panel member. More importantly, we note that Childress does not allege nor did he establish any evidence of a systematic exclusion of blacks from the jury. Thus, Childress has not even attempted to meet the require-

4. At trial Childress' counsel stated that he had been unable to obtain a copy of the September 11, 1980 arrest from the St. Louis Metropolitan Police Department due to a state statute requiring that certain arrest records be destroyed after thirteen months.

5. The Jencks Act, 18 U.S.C. § 3500(a), provides in relevant part:
In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection on direct examination in the trial of the case.

At the suppression hearing the magistrate concluded that the arrest report was not discoverable because a pretrial hearing is not a "trial" within the meaning of the Jencks Act. On appeal Childress argues that a suppression hearing should be considered a trial within the meaning of the Jencks Act.

Although several courts have held that a pretrial trial hearing is not a "trial" within the meaning of the Jencks Act, this court has not ruled on that issue, see United States v. Bruton, 647 F.2d 818, 824 n. 9 (8th Cir.), cert. denied, 454 U.S. 868, 102 S.Ct. 333, 70 L.Ed.2d 170 (1981), and need not decide it in the present case.

ments established in *Swain v. Alabama,* 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965).

The judgment of the district court is affirmed.