
DA 07-0245

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 71

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAVID ADKINS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. BDC 06-261
Honorable Julie Macek, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Koan Mercer, Assistant Appellate Defender; Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; David Ole Olson, Assistant Attorney General; Helena, Montana

            Brant S. Light, Cascade County Attorney; Joel Thompson, Deputy County Attorney; Great Falls, Montana

                Submitted on Briefs:  September 24, 2008

                              Decided:  March 10, 2009

Filed:

            _____
                        Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    David Neil Adkins ("Adkins") appeals from rulings of the Eighth Judicial District Court denying his untimely motions to suppress un-*Mirandized* statements that led to the discovery of evidence which ultimately led to his conviction for felony Criminal Possession of Dangerous Drugs and misdemeanor Criminal Possession of Drug Paraphernalia.  We affirm.

**Factual and Procedural Background**

¶2    In April of 2006, Adkins was implicated in a methamphetamine distribution ring. The individual implicating Adkins also indicated that Adkins kept a small amount of methamphetamine at his residence.  With the assistance of Adkins's probation officer, agents from the Central Montana Drug Task Force ("CMDTF") decided to conduct a probation search of Adkins's residence, planning to use any methamphetamine found as leverage to gain his cooperation in their larger investigation.  The agents met Adkins in his driveway, searched his person pursuant to the terms of his probation, and explained that he had been implicated in the methamphetamine ring.  Upon the agents' inquiry, Adkins indicated he had a personal use amount of methamphetamine and paraphernalia hidden in his basement, which the agents retrieved.  Adkins spent the next eleven days sequestered in a hotel room, cooperating with the CMDTF investigation into the larger methamphetamine distribution ring in exchange for their promise not to bring federal charges against him.

¶3      On May 25, 2006, Adkins was charged with felony Criminal Possession of Dangerous Drugs With Intent to Distribute (hereinafter "intent to distribute") and misdemeanor Criminal Possession of Drug Paraphernalia.  Adkins pled not guilty to both charges, and a jury trial was scheduled.  For reasons not relevant to this opinion, at the omnibus hearing on November 15, 2006, the trial date was continued upon Adkins's motion and the court extended the deadline for filing pretrial motions to November 29, 2006.  On November 27, 2006, the State moved to amend the information to add an alternative count of felony Criminal Possession of Dangerous Drugs (hereinafter "straight possession"), which the District Court granted.  On November 28, 2006, Adkins filed a motion to suppress statements made during his eleven day sequestration in the hotel room, alleging the CMDTF agents had not complied with the requirements set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).  Adkins was arraigned on the straight possession charge and entered a plea of not guilty.  On January 23, 2007, the day before the court heard argument on Adkins's motion to suppress, the State again moved to amend the information to dismiss the intent to distribute charge.

¶4      At the hearing, the District Court determined that, in light of the State's decision to prosecute Adkins solely for the straight possession charge, Adkins's motion to suppress statements made in the hotel room (which formed the basis for the intent to distribute charge) was rendered moot.  The court's decision was based in part upon the State's representation that the remaining charges were based solely on events that occurred during the initial encounter with the CMDTF agents at Adkins's residence, prior to his

3

sequestration in the hotel room. Adkins's defense counsel strenuously objected, arguing that the straight possession charge constituted a new charge of which Adkins had no notice. Counsel therefore argued Adkins needed additional time to file a new motion to suppress statements he made to the CMDTF officers during the initial encounter which ultimately resulted in the recovery of methamphetamine and paraphernalia from his residence.

¶5      The District Court explained to Adkins's counsel that the straight possession charge was not new, rather, that Adkins had notice of both the charge and the underlying facts since at least November 27, 2006, when the prosecution amended the information to add the alternative charge. The court noted that what Adkins's counsel alleged was an "11th hour" change in the charges was actually of benefit to Adkins—that the State was simply removing the more serious alternative charge from the information. Ultimately, the court denied Adkins's oral motion to continue, maintaining the scheduled trial date.

¶6      On January 25, 2007, Adkins filed a "Motion for a Hearing on *Miranda*." In substance, the motion sought to exclude the statements Adkins made to the CMDTF agents which led to the discovery of methamphetamine and paraphernalia in his basement. The District Court denied the motion as untimely. A jury trial was held, and Adkins was convicted of both charges.

**Issues**

¶7      We restate the dispositive issues on appeal:

4

¶8    1.  Was the District Court required to hold a second omnibus hearing upon Adkins's arraignment on an alternative charge where the factual basis for the alternative charge was the same as the factual basis for the initial charges?

¶9    2.  Did the District Court err in denying Adkins's motion for a suppression hearing as untimely?

¶10    3.  Was Adkins denied effective assistance of counsel?

## Standard of Review

¶11    A district court's determination that a motion to suppress is untimely is a conclusion of law which we review for correctness. *State v. VonBergen*, 2003 MT 265, ¶ 7, 317 Mont. 445, 77 P.3d 537. We review for abuse of discretion a district court's determination of the existence of good cause to grant relief from a waiver of an untimely motion to suppress. *VonBergen*, ¶ 18. We similarly review a district court's trial administration rulings for abuse of discretion. *State v. Price*, 2006 MT 79, ¶ 17, 331 Mont. 502, 134 P.3d 45. Finally, claims of ineffective assistance of counsel implicate mixed questions of law and fact for which our review is de novo. *State v. Wood*, 2008 MT 298, ¶ 19, 345 Mont. 487, 191 P.3d 463.

## Discussion

¶12    As a threshold matter, Adkins's assertion that the dispositive issue on appeal is whether the CMDTF agents' un-*Mirandized* questioning violated his constitutional rights is not well taken. It is well established that this Court should avoid constitutional issues whenever possible. *See e.g. Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 2007 MT 183, ¶ 62, 338 Mont. 259, 165 P.3d 1079. Where, as here, we deem it possible to resolve the

merits of an appeal without resort to a resolution of constitutional questions presented, we take that approach. *Sunburst*, ¶ 62. We therefore turn to the dispositive issues on appeal.

¶13 **1. Was the District Court required to hold a second omnibus hearing upon Adkins's arraignment on an alternative charge where the factual basis for the alternative charge was the same as the factual basis for the initial charges?**

¶14 Section 46-13-110(1), MCA, provides that the District Court shall hold an omnibus hearing "within a reasonable time following the entry of a not guilty plea but not less than 30 days before trial." The District Court may grant the State leave to substantively amend an information up until five days before trial. Section 46-11-205(1), MCA. Where the State substantively amends an information, the defendant must be given a reasonable time to prepare for trial on the amended information. Section 46-11-205(2), MCA. The criminal procedure statutes are silent as to whether a new omnibus hearing is required where a criminal defendant is arraigned on an alternative charge in an amended information. However, failure to hold an omnibus hearing where such failure prejudiced the defendant may constitute reversible error. Section 46-20-701(1), MCA.

¶15 Adkins contends that the plain language of § 46-13-110(1), MCA, required the District Court to hold a new omnibus hearing after he entered a plea of not guilty to the alternative straight possession charge contained in the amended information. The State counters that the factual basis underlying the intent to distribute charge was identical to the factual basis underlying the straight possession charge, and thus a new omnibus hearing was not required because it would serve no practical purpose. Essentially, the State argues that the District Court correctly concluded that "nothing had changed."

6

¶16    We find the State's logic persuasive. Adkins was originally arraigned on the intent to distribute charge. The charge of Possession of Dangerous Drugs With the Intent to Distribute is predicated on a criminal defendant's possession of dangerous drugs. Here, the intent to distribute charge was predicated on Adkins's possession of the drugs found in his basement. Therefore, the factual basis underlying the amended charge of straight possession was identical to the factual basis underlying the intent to distribute charge for which an omnibus hearing had already been held. Where, as here, the State amends an information to charge an alternate, lesser included offense which is supported by an identical factual basis, the District Court is not required to hold a new omnibus hearing.

¶17    This conclusion is consistent with a holistic view of our criminal procedure statutes and relevant case law. Conspicuously absent from § 46-11-205, MCA, which provides for a substantive amendment of an information up to five days before trial, is language requiring that a new omnibus hearing be held. Rather, the statute logically provides that the defendant must be given a reasonable time to prepare for trial on the amended information. Section 46-11-205, MCA. The statute therefore requires the District Court to allow reasonable time for a defendant to prepare for trial in light of the substantive changes to the information. In the event the factual basis underlying the amended charge differs from the factual basis underlying the charge upon which the defendant was originally arraigned, a new omnibus hearing may be appropriate. However, in the instant case, as the District Court aptly noted, nothing had changed.

7

**¶18    2. Did the District Court err in denying Adkins's motion for a suppression hearing as untimely?**

¶19    Under § 46-13-302(1), MCA, "[a] defendant aggrieved by an unlawful search and seizure may move the court to suppress as evidence anything obtained by the unlawful search and seizure."  By statutory mandate, a motion to suppress must be made at or before the omnibus hearing, or by a subsequent date upon the court's order.  Section 46-13-101(1), MCA; *VonBergen*, ¶¶ 11, 16.  Failure to bring a motion to suppress within this timeframe constitutes a waiver.  *VonBergen*, ¶¶ 11, 16 (citing § 46-13-102(2), MCA.)  Where such a waiver occurs, the court may grant relief upon good cause shown.  Section 46-13-101(1), MCA.  When considering whether to grant relief from a waiver, a district court "retains the authority to control the progress of the case, and may, within its discretion, grant or deny the requested relief, as it deems appropriate." *VonBergen*, ¶ 21.

¶20    The District Court held an omnibus hearing on August 2, 2006.  Upon Adkins's motion, the court extended the deadline to file pretrial motions to November 29, 2006.  In compliance with the deadline, Adkins filed a motion to suppress statements he made to the CMDTF agents during his eleven day sequestration in the hotel room.  However, Adkins's  motion to suppress did not address, even tangentially, the issue of whether the un-*Mirandized* statements given during his initial encounter with the CMDTF agents in his driveway, which ultimately led to the discovery of methamphetamine and paraphernalia, were gained in violation of his constitutional rights.  Adkins's failure to file a motion to suppress evidence obtained during his initial encounter with the CMDTF agents constituted a waiver.  *VonBergen*, ¶¶ 11, 16.

8

¶21 While the District Court was at liberty to grant Adkins relief from the waiver for good cause shown, we conclude that its decision not to grant such relief was within its broad discretion to control the progress of the case. *VonBergen*, ¶ 21. Adkins argues that good cause was established by virtue of the change in the nature of the charges against him. However, as discussed above, the intent to distribute charge was predicated upon Adkins's possession of the methamphetamine found in his basement during the initial encounter with the CMDTF agents. The straight possession charge was based wholly upon the identical facts. The record indicates that the only evidence of Adkins's possession of methamphetamine was the physical evidence found in his basement. Therefore, Adkins's counsel had notice of the facts supporting the straight possession charge (and by extension, the facts giving rise to a motion to suppress the evidence supporting that charge) at the time of his original arraignment on the intent to distribute charge. Under these circumstances, the District Court did not abuse its discretion by not finding good cause to grant relief from Adkins's waiver of the right to file a motion to suppress un-*Mirandized* statements which ultimately led to the discovery of the methamphetamine and paraphernalia in his basement.

¶22 Adkins cites *State v. Bentley*, 156 Mont. 129, 477 P.2d 345 (1970), for the proposition that where confusion over charges exists between the parties and the district court, relief from an untimely motion should be granted. *Bentley* is inapposite to the circumstances in this case. There, we affirmed the district court's decision to grant relief from a waiver where the State expressed its intention to dismiss a charge against the

defendant and then failed to fulfill its promise to do so. *Bentley*, 156 Mont. at 132, 133, 477 P.2d at 346. Here, any confusion over charges was Adkins's alone. In the final analysis, Adkins was aware of the factual basis for both the intent to distribute and the straight possession charge, and any corresponding motion to suppress, from the inception of the case. Adkins's contention that the nature of the charges against him had fundamentally changed is without support in the record. The District Court did not abuse its discretion by finding that no good cause existed for allowing an untimely motion to suppress.

¶23    **3. Was Adkins denied effective assistance of counsel?**

¶24    As a threshold matter, we note the State does not dispute that Adkins's ineffective assistance claim is record-based and therefore appropriate for review on direct appeal. We thus analyze Adkins's claim under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). *Hammer v. State*, 2008 MT 342, ¶ 10, 346 Mont. 279, 194 P.3d 699. A defendant bears the burden of proving that: 1) the performance of defendant's counsel was deficient; and 2) that counsel's allegedly deficient performance was prejudicial. *Hammer*, ¶ 10 (citing *Strickland*, 466 U.S. at 687). Where the defendant makes an insufficient showing as to one prong of the test, it is unnecessary to address the other prong. *Hammer*, ¶ 10. "[W]hen it is possible to dispose of an ineffective assistance of counsel claim based on the claim's failure to establish that the defendant was sufficiently prejudiced, it is best to follow that course." *Hammer*, ¶ 10.

10

¶25 In order to show that defense counsel's allegedly deficient performance was prejudicial, a defendant must show that a reasonable probability exists that the result of the proceeding would have been different had defense counsel's performance not been deficient. *Clausell v. State*, 2005 MT 33, ¶ 19, 326 Mont. 63, 106 P.3d 1175. Where a defendant's claim of ineffective assistance of counsel is predicated upon failure to file a motion to suppress evidence, he must "establish that there was arguably some merit to such a motion." *State v. Frasure*, 2004 MT 305, ¶ 12, 323 Mont. 479, 100 P.3d 1013.

¶26 Adkins asserts that the CMDTF agents' failure to *Mirandize* him rendered his unwarned statement regarding the location of the methamphetamine and paraphernalia in his home, and in turn the physical fruits of those unwarned statements, inadmissible. The State maintains that the physical evidence would be admissible pursuant to the doctrine of inevitable discovery.

¶27 Assuming *arguendo* that Adkins, while on probation, was entitled to *Miranda* warnings prior to his providing the location of the evidence, and assuming that the fruits of those un-*Mirandized* statements would be subject to the exclusionary rule,[1] the physical evidence supporting Adkins's conviction would have nonetheless been admissible under the doctrine of inevitable discovery.

---

[1] Because we conclude that ultimately, the evidence would have been admissible under the inevitable discovery doctrine, we leave open the question of whether the exclusionary rule would have application to evidence that was the fruit of an un-*Mirandized* statement. (*See U.S. v. Patane*, 542 U.S. 630, 124 S. Ct. 2620 (2004), plurality opinion holding that the exclusionary rule does not require the suppression of physical evidence discovered as a result of un-*Mirandized* but voluntary statements.)

¶28   The inevitable discovery doctrine is an exception to the general rule that courts must exclude evidence obtained by illegal means. This Court has recognized the application of the inevitable discovery doctrine in Montana. *See e.g. State v. Dickinson*, 2008 MT 159, 343 Mont. 301, 184 P.3d 305; *State v. Notti*, 2003 MT 170, 316 Mont. 345, 71 P.3d 1233; *Clausell v. State*, 2005 MT 33, 326 Mont. 63, 106 P.3d 1175. The doctrine of inevitable discovery provides that evidence otherwise inadmissible under the exclusionary rule need not be excluded if the prosecution can show that the evidence would have been discovered by legal means. *Dickinson*, ¶ 19; *Notti*, ¶ 20. Our inquiry in this regard requires us to determine whether law enforcement had sufficient evidence to procure a search warrant. *See e.g. Dickinson*, ¶ 25 (citations omitted). Where we have found that law enforcement had sufficient untainted evidence to obtain a search warrant, we have applied the doctrine of inevitable discovery. *Dickinson*, ¶¶ 25-27.

¶29   In the instant case, Adkins does not dispute that under the conditions of his probation, his residence was subject to random search at any time, with or without probable cause. It is also uncontroverted that at the time Adkins informed the officers of the location of the methamphetamine and paraphernalia in his basement, his probation officer was present and poised to conduct a probation search. Finally, there is no dispute that the CMDTF agents (and by extension Adkins's probation officer) had been informed by Adkins's colleague that he had a personal use amount of methamphetamine hidden in his house. The imminent probation search was an independent legal means by which the

12

evidence would have been discovered, and therefore falls under the purview of the doctrine of inevitable discovery.

¶30    We conclude that a motion to suppress based on the CMDTF agent's failure to administer *Miranda* warnings would have been without merit.  Consequently, Adkins's counsel's failure to timely file such a motion was not prejudicial, thus his ineffective assistance of counsel claim must fail.

¶31    Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JIM RICE
/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER